IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JEROME MILLER                                                          PLAINTIFF

v.                            CASE NO. 2:22-CV-00115-BSM

ARKANSAS STATE UNIVERSITY
BOARD OF TRUSTEES, *et al.*                                           DEFENDANTS

<u>ORDER</u>

Defendants' motion for summary judgment [Doc. No. 40] is granted and Jerome
Miller's claims are dismissed with prejudice.

I. BACKGROUND

Miller is a black man who is suing Arkansas State University and other defendants
(collectively "ASU") for passing over him and hiring one of his former students to fill a full-
time position in its aviation maintenance technician ("AMT") program, located at ASU's
West Memphis campus.  *See* Miller EEOC Charge, Doc. No. 40-1; Miller Dep. 36:13–17,
38:22–23, Doc. No. 40-2; Gray Dec. ¶ 3, Doc. No. 40-3.  ASU offers vocational and
technical certificates, such as the one offered by the AMT program, through its Workforce
Education Department.  Gray Dec. ¶ 4, Miller Dep. 36:13–22.  The AMT program is
regulated by the Federal Aviation Administration ("FAA") and prepares students to become
licensed aircraft mechanics.  *See* 14 C.F.R. Part 147, Gray Dec. ¶ 8.  The AMT program must
meet extensive FAA requirements to maintain its FAA certificate.  Gray Dec. ¶¶ 9–10, Miller
Dep. 53:15–54:1, 14 C.F.R. § 147.13.

Jeff Gray and Dr. Callie Dunavin took over the day-to-day operations of the AMT

program in August 2018, and were charged with improving its standing with the FAA because the program was in a perilous position  *Id.* at ¶¶ 5–6, 18–19.  Dunavin and Gray were assisted by Sherri Reid.  *Id.* at ¶ 24.

Miller first worked as an adjunct instructor in the AMT program on a per-semester basis from January 2016 to May 2017.  Adjunct Fac. Emp. Conts., Doc. No. 40-5; Gray Dec. ¶ 14.  He filled a temporary position and had a dedicated start and end date each of these three semesters.  Miller Dep. 44:10–15.

Miller came back and filled another temporary position in the AMT program in the spring semester of 2019.  *Id.* at 46:9–47:11; Miller Intent to Hire Form, Doc. No. 40-6.  Gray, who was then the Interim Dean of Workforce Education, hired Miller as a "Temporary Full-Time Instructor" to cover another professor's classes while that professor took leave.  Miller Dep. 46:9–47:11, Gray Dec. ¶ 16.  Gray interviewed both Miller and white man named Charles Rye for this position.  Gray Dec. ¶ 17.  During his interview with Miller, Gray specifically discussed the importance of recordkeeping and FAA compliance.  Miller Dep. 56:16–57:13.  Gray hired Miller, who accepted the position knowing that he would be relieved when the professor who was on leave returned.  Miller Dep. 46:9–47:11.

Reid, Gray, and Dunavin prepared a compliance report regarding the AMT program in the spring 2019 semester.  AMT Program Compliance Update, Doc. No. 40-12.  The report documented a number of problems with Miller and Allan Bardos, the other AMT program instructor, primarily centered on lax enforcement of tardiness and absenteeism rules. *Id.*  Miller denies failing to enforce these rules.  Pl.'s Resp. to Def.'s Statement of Facts ¶ 43,

2

Doc. No. 46.  The report noted that Reid had observed the full-time instructors' supervision of their students on March 14, 2019, and found that Bardos was with his students only 197 out of 480 minutes, while Miller was with his students only 116 out of 480 minutes.  *See* AMT Program Compliance Update 6.

ASU states that the report's findings deterred it from considering Miller for future full-time instructor positions.  Gray Dec. ¶ 29.  It states that the report did not impact Bardos because he was already a full-time instructor who was already planning to retire the following year.  *Id.*; Haggard Dec. ¶ 4.  Indeed, Bardos retired in 2020.  Haggard Dec. ¶ 4.

ASU also claims that another incident deterred it from hiring Miller for a full-time position.  On April 15, 2019, a student in Miller's class named Jason Williams broke his leg when he jumped from the wing of a 727 airplane while unsupervised.  The airplane's hydraulic system had caused its stairs to close, trapping Williams inside.  Apr. 15, 2019 Accident Rep., Doc. No. 40-13.  With no one to help him, Williams climbed out onto the airplane's wing and jumped.  *Id.*  Miller was held accountable for failing to properly supervise his class, and JaNan Abernathy, who served on ASU's Incident Review Committee, believed Miller acted unprofessionally during the ASU's efforts to review the incident.  Gray Dec. ¶¶ 31–32; Incident Rep. Notes, Doc. No. 40-14.  This occurred only a few weeks before Miller's temporary employment concluded.  Gray Dec. ¶ 33.  Miller states that the AMT program's administrators never mentioned these concerns to him.  Def.'s Resp. to Pl.'s Statement of Facts ¶¶ 59–60.

In the spring 2020 semester, ASU hired Williams, Miller's former student, to instruct

3

a three-week class for students whose class schedules had been interrupted by the COVID pandemic.  Gray Dec. ¶ 35; Second Williams Intent to Hire Form, Doc. No. 40-21.  Williams was qualified to teach in the two areas in which he was certified.  Gray Dec. ¶ 36.  He was also a 4.0 student with various accolades. Williams Application & Resume, Doc. No. 40-19.

Williams graduated from the AMT program with an excellent academic record, and Gray received positive feedback about him from faculty, staff, and students.  Gray Dec. ¶ 39. Based on these qualifications, Gray offered Williams the full-time position created by Bardos's May 2020 retirement.  *Id.*; *see* Williams Emp. Cont., Doc. No. 40-22.  Despite Miller's repeated attempts to attain full-time employment, the AMT program's administrators did not consider Miller for the position.  Gray Dec. ¶ 40; *see* June 11, 2019 Cover Letter, Doc. No. 40-15; Oct. 25, 2019 Cover Letter, Doc. No. 40-16; Dec. 2, 2019 Phil. of Educ. E-Mail, Doc. No. 40-17.

Miller filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2021.  *See* Miller EEOC Charge.  In his charge, Miller claimed he was discriminated against on the basis of his race when a "less qualified, white-male was selected" for the full-time aircraft maintenance instructor position in August 2020. *Id.*  The EEOC issued a right to sue letter, which Miller received on March 24, 2022.  Right to Sue Letter, Doc. No. 40-24.  Miller filed this lawsuit 92 days later on June 24, 2022. Compl., Doc. No. 1.  Miller sues the defendants for race discrimination in violation of Title VII and 42 United States Code sections 1981 and 1983.  *See* Sec. Am. Compl., Doc. No. 23.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Defendants' motion for summary judgment is granted.

A.   Timely Filing

Defendants' motion for summary judgment based on Miller's failure to file suit within ninety days of receiving his right to sue letter from the EEOC is denied. Miller filed suit 92 days after receiving the right to sue letter. Although plaintiffs have ninety days to file suit after receiving the right to sue letter, courts often apply a "five-day presumption of mailing time." *Frazier v. Vilsack*, 419 F. App'x 686, 689 (8th Cir. 2011) (per curiam); *see Rucker v. Potter*, 215 F. App'x 406, 408 (6th Cir. 2007). The EEOC sent the letter to Miller on March 24, 2022, and he filed suit 92 days later on June 24, 2022. Consequently, Miller's

5

claims are addressed on the merits.

      B.    <u>Title VII</u>

      Summary judgment is granted on Miller's Title VII race discrimination claim because he has failed to present direct or indirect evidence of discrimination. *See Putman v. Unity Health Sys.*, 348 F.3d 732, 734 (8th Cir. 2003).

      Miller has provided no direct evidence of discrimination because he has pointed to no "explicit and unambiguous" instances of discrimination. *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995), *aff'd*, 82 F.3d 16 (2d Cir. 1996). Indeed, he has offered no "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)).

      He has also failed to present indirect evidence of discrimination. To present indirect evidence of discrimination, Miller must first establish a prima facie case of discrimination by showing that (1) he belongs to a protected class, (2) he applied for and was qualified for the job, (3) he was rejected, and (4) ASU sought applications from others. *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1196 (8th Cir. 2006) (citing *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990)). If Miller establishes a prima facie case, ASU must offer legitimate reasons for hiring Williams. *See Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 872–73 (8th Cir. 1998). If ASU provides legitimate reasons for hiring Williams, Miller must show that the reasons offered by ASU were merely pretext for discrimination. *See Dixon v.*

*Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc).

Miller has established a prima facie case of race discrimination because (1) he is black, (2) he applied for and was qualified for the full-time AMT instructor position, (3) he was rejected, and (4) ASU sought applications from others, specifically Williams.   In response, ASU asserts that it did not hire Miller because of the supervision compliance issue, the fact that one of his students suffered a broken leg when he failed to supervise him, and because he failed to properly cooperate in the investigation that occurred after the student was injured.   Miller has not demonstrated that these reasons are merely pretext for race discrimination.

ASU states that it relied on Reid's internal compliance report, the accident report, and Abernathy's incident report notes in determining that Williams was a better candidate than Miller for the full-time position. See Doc. Nos. 40-12, 40-13, 40-14.   Miller disputes the reports' findings.   Pl.'s Resp. to Def.'s Statement of Facts ¶ 81.   At first blush, this would appear to create a triable factual issue, but it does not because Miller's dispute of the reports' findings does not show that ASU improperly relied on those findings.   *See Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) (pretext cannot be found simply by showing that an employer's "honest belief" was erroneous whether the employer's explanation is based on first-hand knowledge or third-party reports).   To prove that ASU's stated reasons for hiring Williams over Miller are pretext, Miller must present evidence that ASU knew the information contained in the reports was at least misleading.   This would provide some

7

indication that the reasons offered by ASU are dishonest.  This is true because pretext cannot be established by showing that an employer's honest belief was "unwise, or even unfair." *Main*, 959 F.3d at 325.  Although ASU may have been unwise for hiring Williams, nothing in the record shows that ASU was dishonest in its determination that Williams was better suited than Miller for the job.  *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) (judges are not HR directors with the right to second guess employers' hiring decisions).

C.    Section 1981

Summary judgment is granted on Miller's section 1981 claim for the same reasons provided above.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (section 1981 race discrimination claim is analyzed almost identically to Title VII claim, albeit with a higher "but for" causation standard).

D.    Section 1983

Summary judgment is granted on Miller's section 1983 claim for the same reasons provided above.  *See Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756–57 (8th Cir. 2003) (section 1983 race discrimination claim is analyzed under the same framework as Title VII claim); *see also Moss v. Texarkana Ark. Sch. Dist.*, 240 F. Supp. 3d 966, 982 (W.D. Ark. 2017) (same).

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and

Miller's claims are dismissed with prejudice.

IT IS SO ORDERED this 26th day of December, 2023.

_____
UNITED STATES DISTRICT JUDGE

9